Filed 10/21/24  P. v. Peterson CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOANNA LORRAINE PETERSON,<br><br>    Defendant and Appellant. | C099250<br><br>(Super. Ct. Nos. CRF05-0008876-02, 05F8876) |

This appeal is from the trial court's denial of defendant Joanna Lorraine Peterson's petition for resentencing made pursuant to Penal Code section 1172.6.  (Statutory section citations that follow are found in the Penal Code unless otherwise stated.)  Effective June 30, 2022, the Legislature renumbered former section 1170.95 to section 1172.6.  (Stats. 2022, ch. 58, § 10.)  There were no substantive changes to the statute.  Defendant filed this petition under former section 1170.95, but we will cite to the current section 1172.6.

1

In 2011, defendant pleaded guilty to second degree murder and second degree robbery. The trial court denied defendant's petition for resentencing under section 1172.6 after an evidentiary hearing. Defendant argues we must reverse the trial court's order because defense counsel provided ineffective assistance of counsel. We affirm the order.

## FACTS AND HISTORY OF THE PROCEEDINGS

On our own motion, we incorporate by reference our prior opinion in *People v. Peterson* (Oct. 6, 2022, C094574) (nonpub. opn.) (*Peterson II*).

J.M. was murdered in 2005. Defendant and her codefendant, Scott Varner, were charged with premeditated murder (§ 187, subd. (a)); second degree robbery (§ 211); kidnapping (§ 207, subd. (a)); kidnapping for robbery (§ 209, subd. (b)); kidnapping for carjacking (§ 209.5, subd. (a)); and carjacking (§ 215, subd. (a)). The information also alleged the special circumstance that the murder was committed in the course of those additional offenses.

In 2008, defendant entered a plea agreement in which she pleaded guilty to second degree murder in exchange for dismissal of the remaining charges and a sentence of 15 years to life in state prison. As part of the plea agreement, defendant agreed to testify fully and truthfully at all stages of Varner's trial and at any interview. Varner was convicted of the special circumstance murder of J.M. and sentenced to death. (*People v. Peterson* (2012) 211 Cal.App.4th 1072, 1082 (*Peterson I*).) Following Varner's trial, the trial court vacated defendant's plea, finding that she was dishonest during the trial regarding her role in the killing, as there was evidence she was more deeply involved in the murder. (*Id.* at pp. 1083-1084.) Specifically, the court found defendant (1) falsely denied wearing the white gloves found in J.M.'s car even though her DNA was inside them; (2) was not credible concerning her prior relationship with J.M. and that she and Varner may have selected J.M. as a victim based on this prior relationship; and (3) lied

2

repeatedly to the police. (*Id*. at pp. 1082-1083.) In 2011, defendant entered another plea agreement in which she pleaded guilty to second degree murder and robbery in exchange for a sentence of 17 years to life in state prison.

In 2019, defendant filed a petition for resentencing pursuant to section 1172.6. (*Peterson II*, *supra*, C094574.) The trial court denied her petition for failure to make a prima facie showing. Defendant subsequently filed two identical petitions. (*Ibid*.) After the court denied these petitions for the same reasons that it denied the first, defendant appealed. (*Ibid*.) Another panel of this court held defendant made a prima facie showing of eligibility and that nothing in the record of conviction established that defendant was ineligible for relief as a matter of law. (*Ibid*.) We remanded the matter, directing the trial court to issue an order to show cause and hold an evidentiary hearing. (*Ibid*.)

On remand, defendant filed a memorandum in support of her petition for resentencing pursuant to section 1172.6 and requested the trial court issue an order to show cause and set an evidentiary hearing. The People filed an opposition and attached the respondent's brief filed in case No. C094574 as an exhibit. The trial court granted the order to show cause and set a date for the evidentiary hearing.

At the evidentiary hearing, the trial court took judicial notice of defendant's testimony in Varner's trial and noted the parties "stipulated that the brief constitutes the record." The parties agree: (1) the brief the trial court referred to is respondent's brief in case No. C094574, which was attached to the People's opposition, and (2) the factual background in the brief quotes the factual background in *Peterson I* verbatim. The factual background in *Peterson I* was based on numerous sources including: defendant's statements during an interview with police; defendant's testimony at Varner's trial; and Varner's interview the day he was arrested, a recording of which was played for the jury at his trial. (*Peterson I*, *supra*, 211 Cal.App.4th at pp. 1075-1081.)

According to defendant's statements to police and trial testimony, it was Varner's idea to kill J.M. and defendant refused to help him. Defendant and Varner were trying to

3

get drugs when Varner fought with another man and took his knife. After the fight, they waited at an apartment complex to buy drugs and saw J.M. Defendant had seen J.M. previously when defendant used to live nearby and helped J.M. with groceries once before. Defendant did not think J.M. recognized her. Varner asked J.M. to give defendant and Varner a ride to the Shasta Lake area and she agreed. As they approached Redding, Varner threatened J.M. with a gun and a knife and demanded money. J.M. complied. Varner said he wanted to visit his brother's gravesite, so they stopped at a cemetery. There, Varner told defendant they needed to kill J.M., because she could identify them. Defendant refused to help Varner in killing J.M. Varner proceeded to beat and strangle J.M. for about 20 minutes, until she stopped moving. During those 20 minutes, defendant was curled up in the backseat. Varner then forced defendant at knifepoint to help him remove J.M.'s body from the car. After the murder, Varner and defendant drove away from the scene in J.M.'s car. Varner ultimately crashed J.M.'s car into a pole and they abandoned it. Defendant and Varner used J.M.'s keys to enter J.M.'s apartment. When J.M.'s neighbor saw them, defendant told the neighbor she was J.M.'s niece.

During their investigation, law enforcement officers found a pair of white gloves in the backseat of J.M.'s car. Defendant's DNA was inside the gloves. Defendant denied wearing the gloves and could not explain how her DNA got inside. On cross-examination, defense counsel's questioning portrayed defendant as "an inveterate liar." She admitted she had denied any involvement in the murder until she learned Varner was in custody and had identified her; minimized her involvement in the murder, denying being present at the time; and repeatedly lied to law enforcement interviewers about the details of the murder. On cross-examination, counsel also demonstrated inconsistencies in defendant's testimony related to the extent of her relationship with J.M. and of her drug use.

4

According to Varner's interview on the day he was arrested, defendant knew J.M. After initially claiming an unidentified male and female beat and killed J.M., Varner later stated the murder happened because he wanted J.M.'s car. Varner stated he and defendant left the car at one point, hoping J.M. would run away and leave them with the car, but she did not. While they were outside the car, defendant said she wanted to kill J.M. When they got back in the car, Varner started strangling J.M. and when she fought back, defendant began pulling her hair and pulled her between the seats. Varner tried to knock J.M. out, but defendant jumped on J.M. and strangled her. He claimed he was simply "trying to teach [defendant] how to do it." Varner also stated defendant wore gloves.

Based on the evidence from the factual background and defendant's trial testimony, on defendant's present motion the trial court found: (1) defendant was a major participant in the underlying crime of robbery and acted with reckless indifference to human life and (2) she aided and abetted Varner in killing J.M. The court based these findings on the fact that defendant had an active role in planning the robbery and knew Varner was violent and was armed with a knife. Varner and defendant targeted J.M. because she knew defendant, which induced J.M. to give Varner and defendant a ride, and placed J.M. in an isolated situation. Defendant was also present during the murder and assisted Varner in killing J.M. instead of stopping him. The trial court found the evidence of defendant's DNA inside the white gloves showed defendant at the least helped hold down J.M. during the 20 minutes it took J.M. to be killed. She also knew that J.M. could identify her when Varner told her they need to kill J.M. because of this risk. The trial court concluded she directly participated in the killing. The trial court denied defendant's petition.

DISCUSSION

Defendant argues defense counsel provided ineffective assistance at the hearing by stipulating to the admission of Varner's hearsay statements and failing to object to their admission at the evidentiary hearing. She asserts there was no strategic reason for defense counsel to permit the admission of Varner's hearsay statements. She further contends the admission of Varner's statements was prejudicial, as it was the only direct evidence defendant helped Varner kill J.M.

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) amended "the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) Senate Bill 1437 achieved this by amending sections 188 and 189. As relevant here, section 189, subdivision (e) now provides: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

Senate Bill 1437 also added what is now section 1172.6, "which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*People v. Lewis* (2021) 11 Cal.5th 952, 959.) If a defendant makes a prima facie showing of eligibility for relief, the trial court must issue an order to show cause and hold an evidentiary hearing. (§ 1172.6, subds. (c) & (d)(1).)

6

At the ensuing evidentiary hearing "to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed." (§ 1172.6, subd. (d)(3).) "The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens." (*Ibid*.)

To establish a claim for ineffective assistance of counsel, the defendant must show defense counsel's performance was deficient and the defendant suffered prejudice as a result. (*People v. Mickel* (2016) 2 Cal.5th 181, 198; *Strickland v. Washington* (1984) 466 U.S. 668, 687-692.) If either element of the ineffective assistance of counsel analysis has not been proven, the defendant's claim of ineffective assistance fails. (*Strickland*, at p. 697.)

As our Supreme Court has observed, "certain practical constraints make it more difficult to address ineffective assistance claims on direct appeal rather than in the context of a habeas corpus proceeding" because "[t]he record on appeal may not explain why counsel chose to act as he or she did." (*People v. Mickel*, *supra*, 2 Cal.5th at p. 198.) If the record on appeal sheds no light on why trial counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one or there could be no satisfactory explanation. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.)

We "presume[e] that counsel's actions fall within the broad range of reasonableness, and afford 'great deference to counsel's tactical decisions.' " (*People v. Mickel*, *supra*, 2 Cal.5th at p. 198.) "[A] reviewing court will reverse a conviction based

7

on ineffective assistance of counsel on direct appeal only if there is affirmative evidence that counsel had ' " 'no rational tactical purpose' " ' for an action or omission." (*Ibid.*) Competent counsel may forgo even a valid objection for the tactical purposes of avoiding the prosecutor calling witnesses to testify directly or avoiding highlighting testimony to the fact finder. (*People v. Campbell* (2020) 51 Cal.App.5th 463, 506.) Further, " '[w]e cannot evaluate alleged deficiencies in counsel's representation solely on defendant's unsubstantiated speculation.' " (*People v. Bonilla* (2018) 29 Cal.App.5th 649, 658.)

Here, the record is silent as to defense counsel's reasons for stipulating to or not objecting to the admission of Varner's hearsay statements. But we can discern at least one rational tactical basis upon which trial counsel may have chosen to stipulate and not to object: because the statute permits the People to introduce new and additional evidence at the hearing, defense counsel could have been concerned the prosecution would simply call Varner as a witness. While Varner's statement directly implicated defendant in the killing, it was also filled with inconsistencies. It is clear the trial court did not entirely accept Varner's version of events, as it explicitly rejected the claim that defendant was the one who initiated the plan to kill J.M. If Varner testified at the evidentiary hearing, he could have provided additional details that would further inculpate defendant. Even if Varner's testimony went no further than his hearsay statements, his live testimony would highlight his version of the events as opposed to the less impactful written summary of his statement. Defense counsel could have reasonably concluded it was better to stipulate to and not object to the admission of Varner's statements than to risk the prosecutor calling Varner as a witness. Thus, defendant has failed to carry her burden of proving ineffective assistance of counsel.

DISPOSITION

The order denying defendant's petition for resentencing is affirmed.

_____
HULL, Acting P. J.

We concur:

_____
BOULWARE EURIE, J.

_____
WISEMAN, J.*

_____

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.